UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SHANGGANG FENG,
*on his own behalf and on behalf of others similarly situated*

                          Plaintiff,

    -against-

KELAI CORP d/b/a Jef Chinese,
FAN YANG,
JAY HUANG,
LAN "DOE" and
QIN "DOE",

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.: 18 CV 12329 (GBD)

## **DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Christopher R. Travis, Esq.
TRAVIS LAW PLLC
40 Wall Street, Suite 2805
New York, New York 10005
Telephone⊗212) 248-2120
*Attorneys for Defendants*


# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... 3

STATEMENT OF FACTS ...................................................................................................... 5

LEGAL ARGUMENT ............................................................................................................. 6

I.   FAN YANG AND JAY HUANG ARE NOT EMPLOYERS UNDER THE FLSA AND NYLL ................................................................................................................................... 6

II.  PLAINTIFF'S FLSA AND NYLL UNPAID WAGE & OVERTIME CLAIMS FAIL ... 8

  i.   The Purported Non-Delivery Related Tasks ..................................................... 9

  ii.  Feng's Trial Testimony Revealed Premeditation and Strategic Evidence Manipulation ............................................................................................................. 11

  iii. Defendants Acted in Good Faith and Liquidated Damages Are Not Merited ........... 12

III. PLAINTIFF'S MEALTIME AND RECORD-KEEPING CLAIMS ARE WHOLLY IMPROPER ............................................................................................................................. 13

IV.  DEFENDANTS DID PROVIDE A WAGE NOTICE TO PLAINTIFF IN COMPLIANCE WITH NYLL §195.1 ................................................................................... 13

V.   PLAINTIFF'S CLAIMS FOR REIMBURSEMENT FOR COSTS AND EXPENSES RELATED TO AN ELECTRIC DELIVERY VEHICLE ARE UNAVAILING ..................... 14

VI.  CONCLUSION ................................................................................................................ 14

## TABLE OF AUTHORITIES

**CASES**

*Browne v IHOP, 2005* US Dist
   LEXIS 48129, at *3 (EDNY Aug. 2, 2005, No. 05-CV-2602 (DGT))………………….....13

*Carter v Dutchess Community Coll.*,
   735 F2d 8, 12 (2d Cir 1984)…………………………………………………...…..6

*De Los Santos v Hat Trick Pizza, Inc. (In re Domino's Pizza Inc.)*,
   2018 US Dist LEXIS 51393, at *19-20 (SDNY Mar. 27, 2018)……………………………13

*EEOC v Wal-Mart Stores, Inc.*,
   2001 US Dist LEXIS 23027, at *21 (WDNY Sep. 28, 2001, 99CV0453)…………………...13

*Elghourab v Vista JFK, LLC, 2019*
   US Dist LEXIS 97949, at *35-36 (EDNY June 11, 2019, No. 17-cv-911 (ARR) (ST))…….12

*Guerra v Trece Corp.*,
   2020 US Dist LEXIS 223309, at *24-25 (SDNY Nov. 30, 2020)…………………………6-7

*Inclan v NY Hospitality Group, Inc.*,
   95 F Supp 3d 490, 505 (SDNY 2015)……………………………………………………12

*Integrity Staffing Solutions, Inc. v Busk*,
   574 US 27, 31 (2014)……………………………………………………………………10

*Liang Huo v Go Sushi Go 9th Ave.*,
   2014 US Dist LEXIS 51621, at *10-11 (SDNY Apr. 10, 2014)………………….....……14

*Lopez v MNAF Pizzeria, Inc.*,
   2021 US Dist LEXIS 57260, at *30 (SDNY Mar. 25, 2021, No. 18-cv-06033 (ALC))…...12

*Mendez v Radec Corp.*,
   232 FRD 78, 83 (WDNY 2005)………………………………………………………10

*Olvera v Bareburger Group LLC*,
   73 F Supp 3d 201, 206 (SDNY 2014)……………………………………………………..7

*Reich v S. New Eng. Telecom. Corp.*,
   121 F3d 58, 64 (2d Cir 1997)………………………………………………………….10

*Zhenkai Sun v Sushi Fussion Express, Inc.*,
   2022 US Dist LEXIS 42109, at *24 (EDNY Mar. 8, 2022, No. 16 CV 4840
   (RPK)(LB))……………………………………………………………………….....13

**STATUTES**

29 U.S.C. § 260………………………………………………………………………………..…12

12 NYCRR § 146………………………………………………………………………………....8

12 NYCRR § 146-2.1……………………………………………………………………………13

N.Y. Lab. L §§ 190……………………………………………………………………………..…7-8

N.Y. Lab. L. § 195.1……………………………………………………………………….………13

N.Y. Lab L § 198………………………………………………………………………..…12

N.Y. Lab L § 663……………………………………………………………………………..12

N.Y. Lab. L §§ 650…………………………………………………………………………………..8

FLSA §206……………………………………………………………………………………7-8

FLSA §207(a)………………………………………………………………………………………..8

The following proposed findings of fact and conclusions of law is respectfully submitted on behalf of Defendants Kelai Corp d/b/a Jef Chinese ("Jef Chinese") , Fan Yang ("Yang") and Jay Huang ("Huang") (collectively referred to herein as the "Defendants"). Plaintiff Shanggang Feng ("Feng" or "Plaintiff") commenced this action in connection based on purported violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 et seq. and New York Labor Law ("NYLL").  As discussed fully herein, the paucity of evidence substantiating Plaintiff's claims coupled with his suspect testimony and unavailing arguments indicates that Plaintiff's claims are not substantiated under the FLSA or NYLL. Accordingly, there is no record to support Plaintiff's allegations.

## STATEMENT OF FACTS

In 2015, cousins Yang and Huang made a significant investment in Jef Chinese, a restaurant with an established history in their family. (Tr. 71: 21-25). Upon their acquisition, they decided to retain the existing staff and management, recognizing the value of continuity. (Tr. 72: 4-10).  At that time Ah Qin had already been managing Jef Chinese for about six years.  (Tr. 72: 11-25). As President, Yang, who also held a position at Bank of America, was only responsible for overseeing some of the restaurant's accounting operations, he did not oversee any of Jef Chinese's employees. (Tr. 73: 5-10). Ah Qin, meanwhile, was entrusted with a broad range of employee-related responsibilities, including but not limited to hiring, firing, determining pay rates, and scheduling. (Tr. 74:1-11). Defendant Huang was not involved in the restaurant's operations at all due to his commitments to other business ventures, including a ramen restaurant, a coffee shop, and a deli. (Tr. 141: 2-5). Unfortunately, Jef Chinese ceased operations in 2020 (Tr. 78: 12-15). Feng, the plaintiff, joined Jef Chinese as a delivery driver on or about August 10, 2016, after being interviewed and hired by Ah Qin and Ah Lan, another employee at the restaurant. (Tr. 13:13-

5

14;17:22-24). He was informed during his interview that his compensation would include tips. (Tr. 14:12-13, 17-19). Feng's work schedule, typically five days a week, was set by Ah Qin. (Tr. 20:6-11). Prior to joining Jef Chinese, Feng had experience in food delivery, having left his last position at Big Szechuan due to low pay. (Tr. 18:3-5,19-20). Despite this background, Feng claims that he was unaware of federal or state employment laws concerning maximum hours or minimum wages during his employment at Jef Chinese from 2016 to 2018. (Tr. 38:1-13; 19:23-25; 20:1-5).

Feng's pay at Jef Chinese was tracked through multiple methods. He personally devised and signed his own timesheets, supplemented by tip sheets and the TimeStation program used by management. See TimeStation Records, **Exhibit A**; Time and Wage Records, **Exhibit B**; Tip Records, **Exhibit C**.

Feng testified that his wages included tips and that his tips averaged $70 - $80 in tips per day. (Tr. 54: 6-9). Feng quit Jef Chinese on or about October 14, 2018. (Tr. 60: 22-23). Two days later, on October 16, 2018, he sought legal counsel for the employment law claims the subject of this action. (Tr. 65:14-19). He then left for China approximately four weeks later and filed the Complaint on December 31, 2018. (Tr. 65: 6-13.)

## LEGAL ARGUMENT

### I. FAN YANG AND JAY HUANG ARE NOT EMPLOYERS UNDER THE FLSA AND NYLL

As an initial matter, Yang and Huang do not meet the criteria to be classified as employers under the FLSA. The Second Circuit considers the following factors when determining whether an individual is liable as an employer for FLSA violations: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Guerra v Trece Corp.*, 2020 US Dist LEXIS 223309, at *24-25

6

(SDNY Nov. 30, 2020) citing *Carter v Dutchess Community Coll.*, 735 F2d 8, 12 (2d Cir 1984). Moreover, "[t]hese factors are to be considered in the totality of the circumstances. None of the factors are dispositive, nor are they exclusive. In addition to these factors, the court may also consider any other relevant evidence of functional control over workers even in the absence of formal control." *Guerra*, 2020 US Dist LEXIS 223309, at *24-25. (internal quotations and citations omitted). The standard for determining whether someone is an employer under NYLL § 190(3) generally mirrors the FLSA. *Id*. at 25; NYLL § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service"). Therefore, the Courts in this District regularly apply the same tests to determine joint liability as an employer under the FLSA and NYLL. *Guerra*, 2020 US Dist LEXIS 223309, at *25; *Olvera v Bareburger Group LLC*, 73 F Supp 3d 201, 206 (SDNY 2014).

In the case of Yang and Huang, analyzing these factors conclusively establishes that they are not employers. While Yang and Huang had investment interests in Jef Chinese, there is no evidence they had the power to hire or fire employees. While Yang relinquished this power to Ah Qin, Huang never had such powers to begin with. (Tr. 97: 17-24; 98:3-15; 102: 13-20; 144:18-25; 145:1-2). Further, the supervision and control over employee work schedules and employment conditions were similarly under Ah Qin's purview. Yang and Huang had no operational control of the restaurant (Tr. 74: 1-11). Regarding the determination of rates and methods of payment, while Yang was involved in some aspects of accounting and payroll, this involvement does not at all equate to control over pay-rate which was also the responsibility of Ah Qin. *Id*. Finally, the maintenance of employment records was, again, a broader administrative duty the responsibility of Ah Qin. *Id.* Moreover, considering the totality of the circumstances and the absence of conclusive evidence of functional control over workers, it is evident that Yang and Huang's roles

were more aligned with passive ownership rather than active management or control of employees. As such, Yang and Huang do not meet the definition of employer under FLSA and NYLL such that they are not liable as an employer for any of Jef Chinese's purported FLSA or NYLL violations.

## II. PLAINTIFF'S FLSA AND NYLL UNPAID WAGE & OVERTIME CLAIMS FAIL

§206 of the FLSA mandates that employers pay their employees no less than a specified hourly amount per 40-hour work week. §207(a) of the FLSA provides that an employer engaged in commerce shall not employ a covered employee for a work week longer than 40 hours unless such employee receives compensation for employment in excess of 40 hours at a rate not less than 1 ½ times the regular rate at which he is employed. Feng claims that Defendants refused to pay him in full for the hours worked at the statutory minimum wage and that he was not compensated for overtime work.

Moreover, Feng asserts that he is entitled to recover from Defendants, pursuant to NYLL §§ 650 *et seq*. and 12 New York Codes, Rules and Regulations (NYCRR) § 146 unpaid wages and overtime compensation. He also claims that Defendants are liable for liquidated damages under NYLL §§ 190 *et seq*, §§ 650 *et seq*. and the New York Wage Theft Prevention Act for not paying him minimum wage.

Feng's substantive claims revolve around the concept that he was not fully compensated for all hours worked and that he was denied overtime pay. During the trial, Feng incredulously stated that the records of hours he worked that he had created and signed were inaccurate. (Tr. 30: 9-13); **Ex. B**. He asserts, rather opportunistically, that despite his records typically indicating he was *off the clock* from 3:00 to 6:00 pm, he was compelled to report these hours as such under Ah Qin and Ah Lan's directives. (Tr. 30: 11-16). He alleges that he continued working during this period and only reported otherwise due to a fear of losing his job. (Tr. 30: 17-20). However, this

8

claim lacks corroborative evidence beyond testimony, with no concrete proof of such directives from Ah Qin or Ah Lan. Verily, Yang stated that this three-hour interval was essentially free time for Feng during which Feng could engage in personal activities such as lunch. (Tr. 83: 1-7).

Feng claims a typical workday at Jef Chinese spanned the entirety of 11:00 am to 10:00 pm without complete relief from work. (Tr. 20: 14-20). Yet, he contradicts himself by admitting that "most of the time, [he was] *just waiting for the order to be ready and to deliver the food*." (Tr. 20: 21-25; 21: 1-4)(emphasis added). Attempting to reconcile this discrepancy, Feng later elaborates that "[d]uring the lunch breaks, then I will still work. I will pack the sauce or to supplement those merchandise, and whatever they order for me, I just ready to deliver them." (Tr. 21:1-4).

      i.    The Purported Non-Delivery Related Tasks

Feng states that his non-delivery work involved cutting onions, packing sauces, cutting cardboard in the basement, replenishing inventory and cleaning windows and doors. (Tr. 27:15-22). Feng estimated spending **1-2** hours on these non-delivery tasks. (Tr. 28: 6-8; 59: 1-10). However, this narrative begins to unravel upon closer examination. Even if, *arguendo*, he performed these non-delivery tasks for 1-2 hours, these tasks could have feasibly been completed during his *clocked in* hours in quieter periods with fewer deliveries. Moreover, there is a conspicuous lack of evidence accounting for Feng's activities for any remaining unaccounted time during this three-hour period. The only documentation Feng provides is delivery receipts for the week leading up to his departure, which is hardly sufficient to substantiate his claims for the entirety of his employment period. See Delivery Receipts, **Exhibit 3**. The dubious evidential significance of these receipts is explored in greater detail below.

Any claims Feng may have related to compensation for the work he allegedly performed between 3:00 and 6:00 pm while he was *off the clock* and presumably on his meal break are unavailing. Following Supreme Court precedent, this Circuit analyzes whether an employee's expenditure of time is considered "work" under the FLSA and NYLL using the "predominant benefit" standard, which "require[s] compensation for a meal break [when] a worker performs activities [during the break] predominantly for the benefit of the employer." *Reich v S. New Eng. Telecom. Corp*., 121 F3d 58, 64 (2d Cir 1997); See also *Mendez v Radec Corp*., 232 FRD 78, 83 (WDNY 2005) (FLSA and NYLL claims for unpaid lunch breaks analyzed under "predominant benefit" standard).  In short, if the employer is not predominantly benefitting, then the employee is not working and cannot be compensated for their time. Although the FLSA does not define 'work', the Supreme Court has broadly defined work as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Integrity Staffing Solutions, Inc. v Busk*, 574 US 27, 31 (2014).  Importantly, not every interruption of an employee's lunch break renders the entire break period compensable under the FLSA…[t]he question is not whether an employee did any work at all during his meal period, but whether that period itself is used primarily to perform activities for the employer's benefit. *Mendez v Radec Corp*., 232 FRD 78, 83 (WDNY 2005).

Here, the work Feng allegedly performed during the 3:00 - 6:00 pm break may have involved cutting onions, packing sauces, cutting cardboard in the basement, replenishing inventory, and cleaning windows and doors.  Given the nature of these tasks and the fact that their frequency, if real, cannot be determined, it is questionable as to whether these are substantial enough to transform the break into compensable work time. The ambiguity regarding how often and for how long Feng purportedly engaged in each specific task during this period raises questions

about the significance of the same. Feng's role at Jef Chinese centered around transporting food to customers and ensuring timely deliveries. In contrast, the tasks Feng claims to have performed during his break are significantly different in nature and not directly related to the immediate and primary duties of a delivery person. Those tasks Feng alleges he performed during this 3-hour period do not directly contribute to the immediate business needs of Jef Chinese. Moreover, and as discussed below, any claim that Feng also legitimately performed deliveries during this period is suspect.

    ii.    <u>Feng's Trial Testimony Revealed Premeditation and Strategic Evidence Manipulation</u>

The delivery tickets issued by Jef Chinese contained, *inter alia*, the date, address, and time of the specific takeout order. Feng stated that he kept his delivery tickets. (Tr. 23: 1-3); **Ex. 3**. In his trial testimony, Feng maintained that during his "off the clock" hours (3:00 pm to 6:00pm), he was actually making deliveries as purportedly evidenced by a series of time-stamped delivery tickets from October 9 to October 14, 2018. **Ex. 3.** Notably, this period aligns with the date Feng quit Jef Chinese – **October 14, 2018**. (Tr. 60: 22-23). When questioned about the absence of similar delivery tickets prior to October 9, 2018 – tickets Feng previously claimed to have preserved – Feng admitted to discarding them. (Tr. 62:9-17). Additionally, he acknowledged disposing of the delivery tickets for earlier in the day and for dinner hours within the same October 9 to October 14 timeframe. (Tr. 63: 14-25; 64: 1-4) Significantly, Feng disclosed that he sought legal counsel for his employment law claims on October 16, 2018, just two days after leaving Jef Chinese. (Tr. 65:14- 19). He left for China approximately four weeks later. (Tr. 65: 6- 13). Such prompt legal maneuvering, when juxtaposed with his selective retention of delivery tickets from a narrow and specific time frame, suggests a deliberate and calculated plan. By discarding all other delivery tickets, especially those that could provide a broader and more comprehensive view of his typical

work pattern, Feng carefully curated the evidence to support his narrative. It implies that the foregoing was orchestrated with the foresight of a pending legal dispute.

Moreover, Feng's prior decision to leave a job due to low pay indicates a level of understanding and concern about wage expectations that contradicts his portrayal as unsophisticated or naïve regarding wage laws. Feng's actions before and after leaving Jef Chinese appear to be those of an individual with a reasonable grasp of his rights and the means to assert them. Thus, Feng's claim that he consistently underreported his hours due to fear of termination appears implausible. His willingness to resign from a position for financial reasons undermines his contention that tolerated underreporting hours out of fear and reveals that he was not as vulnerable or intimidated by the prospect of losing his job as he so claims.

   iii. <u>Defendants Acted in Good Faith and Liquidated Damages Are Not Merited</u>

The FLSA provides that a plaintiff is presumptively entitled to liquidated damages equal in amount to actual damages unless the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA. *Elghourab v Vista JFK, LLC, 2019* US Dist LEXIS 97949, at *35-36 (EDNY June 11, 2019, No. 17-cv-911 (ARR) (ST))(internal quotations and citations omitted); 29 U.S.C. § 260. Similarly, a plaintiff can seek liquidated damages pursuant to the NYLL which also incorporates a good faith standard. NYLL § 198; NYLL § 663(1); See also *Inclan v NY Hospitality Group, Inc.*, 95 F Supp 3d 490, 505 (SDNY 2015). "[C]ourts have not substantively distinguished the federal standard from the current state standard of good faith. *Id*. While the Second Circuit has interpreted the NYLL and FLSA to disallow duplicative liquidated damages for the same course of conduct, it will allow a plaintiff to recover under the statute that provides the greater relief. *Lopez v MNAF Pizzeria, Inc.,* 2021 US Dist LEXIS 57260, at *30

(SDNY Mar. 25, 2021, No. 18-cv-06033 (ALC))(internal citations and quotations omitted). In the event, that this court finds that Defendants did not pay Feng appropriate wages, it is submitted that Defendants nevertheless acted in good faith such that liquidated damages should not be invoked. Yang and Huang, particularly, had such little involvement in the affairs of the restaurant that any discrepancies or inaccuracies on their end would be the result of miscommunication or an administrative error rather than an intentional violation.

### III. PLAINTIFF'S MEALTIME AND RECORD-KEEPING CLAIMS ARE WHOLLY IMPROPER

Feng's sixth cause of action seeks relief holding that Defendants violated NYLL § 162 for failure to provide proper meal periods. While NYLL § 162 does afford an unpaid meal period, there is no private right of action to enforce this provision. See *Browne v IHOP, 2005* US Dist LEXIS 48129, at *3 (EDNY Aug. 2, 2005, No. 05-CV-2602 (DGT)); *EEOC v Wal-Mart Stores, Inc.*, 2001 US Dist LEXIS 23027, at *21 (WDNY Sep. 28, 2001, 99CV0453).

Feng's seventh cause of action alleges that Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Feng in violation of 12 NYCRR § 146-2.1. Feng's claim also fails as a matter of law because no independent cause of action for violations of New York's recordkeeping requirements exists. *Zhenkai Sun v Sushi Fussion Express, Inc.*, 2022 US Dist LEXIS 42109, at *24 (EDNY Mar. 8, 2022, No. 16 CV 4840 (RPK)(LB)); *De Los Santos v Hat Trick Pizza, Inc. (In re Domino's Pizza Inc.)*, 2018 US Dist LEXIS 51393, at *19-20 (SDNY Mar. 27, 2018).

### IV. DEFENDANTS DID PROVIDE A WAGE NOTICE TO PLAINTIFF IN COMPLIANCE WITH NYLL §195.1

Feng alleges that Defendants violated: NYLL § 195.1 which requires that employers provide employees with a wage notice at the time of hiring in their primary language concerning

the terms and conditions of employment related to *inter alia*, the rate of pay and basis thereof. Feng began working for Jef Chinese on or about August 10, 2016. (Tr.13:13-14). He has acknowledged receiving and signing a Notice and Acknowledgment of Pay Rate and Payday dated August 15, 2016, written in English and Chinese (Feng's primary language). (Tr. 16: 21-22); See Notice of Acknowledge of Payrate and Payday, **Exhibit D**. Feng's eighth cause of action fails.

### V. PLAINTIFF'S CLAIMS FOR REIMBURSEMENT FOR COSTS AND EXPENSES RELATED TO AN ELECTRIC DELIVERY VEHICLE ARE UNAVAILING

Plaintiff's testimony failed to establish that any of the Defendants required him to purchase a bike or electric delivery vehicle. *Liang Huo v Go Sushi Go 9th Ave.*, 2014 US Dist LEXIS 51621, at *10-11 (SDNY Apr. 10, 2014) (finding that conclusory claims regarding delivery worker's bicycle was insufficient to find liability). Further, Plaintiff did not testify at the trial that he was required to purchase any additional equipment such as helmets, whistles, etc as a condition of his employment at Jef Chinese.. Plaintiff has submitted no documentary evidence to support these claimed expenses. Thus, Plaintiff is not entitled to recover against Defendants for this claim.

### VI. CONCLUSION

Based upon the record evidence, as well as the factual and legal analyses set forth herein, Counsel for Plaintiff has failed to carry out its requisite burden of proof for establishing that Defendants violated the FLSA and NYLL for the enumerated Complaint allegations.

Dated: December 4, 2023
      New York, New York

                                                Respectfully Submitted,

                                                Christopher R. Travis, Esq.
                                                TRAVIS LAW PLLC
                                                40 Wall Street, Suite 2805
                                                New York, New York 10005
                                                Telephone: (212) 248-2120
                                                *Attorneys for Defendants*